IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| VALERIE Y. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-CV-553-WKW |
| | ) | [WO] |
| MONTGOMERY SURGICAL | ) | |
| CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Valerie Y. Brown brings this employment discrimination and retaliation action against her former employer, the Montgomery Surgical Center. She alleges interference and retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654, and discrimination and retaliation under the Americans with Disabilities Act ("ADA"), *see* 42 U.S.C. §§ 12101–12117. Before the court is the Montgomery Surgical Center's Motion to Dismiss Plaintiff's Amended Complaint, filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. # 28.) The issues raised in the motion are whether the FMLA required her employer to reinstate her in her job with a reasonable accommodation after her return from FMLA leave and whether Ms. Brown failed to exhaust her administrative remedies under the ADA. After careful consideration of the arguments of counsel, the relevant law, and

the pleadings, the court finds that the issues resolve in favor of Defendant and that, therefore, the motion to dismiss is due to be granted.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331.  Personal jurisdiction and venue are uncontested.

## II.  STANDARD OF REVIEW

In ruling on a Rule 12(b)(6) motion to dismiss, courts "must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1089 (11th Cir. 2005) (citation and internal quotation marks omitted).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Moreover, when on the basis of a dispositive issue of law, a plaintiff is precluded from maintaining a cause of action on the facts alleged, a court may dismiss a complaint under Rule 12(b)(6).  *See Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005).

Finally, in addition to considering the properly pleaded allegations of the complaint, on a motion to dismiss, the court can consider exhibits attached to the complaint. *See Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005). The court also can consider "an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

## III.  BACKGROUND

Ms. Brown worked for the Montgomery Surgical Center nearly a decade until her termination on September 8, 2010. At all material times, Ms. Brown worked as a Central Sterile Technician (sometimes referred to by the parties as "CSS Technician II"). In this position, among other things, Ms. Brown assembled, wrapped, and sterilized instrument trays for surgery, and unloaded and loaded carts. (Am. Compl. ¶ 9.)

On February 16, 2010, the Montgomery Surgical Center approved Ms. Brown's FMLA leave for a "serious health condition" pertaining to Ms. Brown's "back-related problems." (Am. Compl. ¶¶ 14, 16.) On April 21, 2010, nine weeks and one day into her FMLA leave, Ms. Brown wanted to return to work. She provided her employer with a doctor's excuse that restricted her from lifting more than twenty-five pounds

and that required her to "alternate sitting and standing during the performance of her job duties." (Am. Compl. ¶¶ 15–16, 24.) Ms. Brown requested the Montgomery Surgical Center to reinstate her in her position and reasonably accommodate her job restrictions, "pursuant to her rights" under the ADA. (Am. Compl. ¶ 16.) But the Montgomery Surgical Center "refused to allow [Ms. Brown] to return to work until she was fully released by her doctor." (Am. Compl. ¶ 18.)

On May 10, 2010, Ms. Brown's FMLA leave expired because the Montgomery Surgical Center refused "to allow [her] to return to work during her FMLA leave." (Am. Compl. ¶ 34.) Also on May 10, the Montgomery Surgical Center filled Ms. Brown's position. (Am. Compl. ¶ 35.) Two days later on May 12, 2010, upon learning that someone else was performing her job, Ms. Brown filed a charge of discrimination against the Montgomery Surgical Center with the Equal Employment Opportunity Commission ("First EEOC Charge").

On the First EEOC Charge, Ms. Brown checked the box for "disability" as the basis for discrimination and indicated that the dates of discrimination occurred between April 21, 2010, and May 12, 2010. She described her claim as follows:

> I am . . . a qualified individual with a disability as defined by Americans with Disabilities Act of 1990, as amended. I have been employed since September 4, 2000. My position is Central Sterile Technician. I have been off work because of my disability since February 16, 2010. Upon attempting to return to work on April 21, 2010, with my doctor's excuse stating my limitations, I requested a reasonable accommodation. My

request was denied. I am able to perform the essential functions of my job with a reasonable accommodation. I have even informed the employer of different methods of how I could be accommodated; my requests continue to be denied. I have been on a personal leave of absence on short term disability without pay since May 12, 2010, subsequent to my Family Medical Leave expiring.

Debbie McWilliams informed me that I could not return to work until I can return to normal duties with no limitations.

I believe that I have been discriminated against because of my disability in violation of the Americans with Disabilities Act of 1990, as amended.

(First EEOC Charge 1 (Ex. A to Am. Compl.).) Ms. Brown never returned to work, and four months after she filed her First EEOC Charge, on September 8, 2010, the Montgomery Surgical Center "formally terminated" Ms. Brown's employment. (Am. Compl. ¶ 37.)

Believing that her termination was retaliatory, on March 22, 2011, Ms. Brown filed another EEOC charge against the Montgomery Surgical Center with the EEOC ("Second EEOC Charge"). Ms. Brown checked the box for "retaliation" as the basis of discrimination and designated that the discrimination occurred on September 8, 2010. In that charge, Ms. Brown alleged the particulars of her claim as follows:

I worked as a CSS Technician II. I filed a previous charge (846 2010 47989). I was discharged on September 8, 2010, and I believe it was in retaliation for filing the previous charge. Sherry Harris, Human Resources, denied me emergency assistance. I was also denied my unemployment compensation.

(Second EEOC Charge 1 (Ex. D to Am. Compl.).)

5

On April 4, 2012, the EEOC mailed two right-to-sue letters to Ms. Brown, one for the First EEOC Charge, and the other for the Second EEOC Charge. The letters informed Ms. Brown that she had to file any federal-law lawsuit based on her EEOC charges within 90 days of her receipt of the notices. (Exs. B & E to Am. Compl.)

Eighty-four days later, on June 27, 2012, Ms. Brown filed the instant lawsuit against the Montgomery Surgical Center. Proceeding *pro se* and with the aid of a Complaint form, Ms. Brown alleged that her employer fired her in retaliation for her "filing a charge with the EEOC." She described the nature of her claim against the Montgomery Surgical Center as follows:

> I worked as a CSS Technician II. I filed a previous charge (846-2010-47989) with EEOC. I was denied my unemployment compensation [and] also employee emergency assistance. I was discharged on September 8, 2010. I believe I have been discriminated against in retaliation for filing a previous charge in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Compl. 2.) Attached to the Complaint was Ms. Brown's Second EEOC Charge alleging retaliation and the EEOC's right-to-sue letter pertaining to that charge to the Complaint.

On August 9, 2012, Ms. Brown filed an Amended Complaint, this time with the assistance of counsel. The Amended Complaint, the operative pleading here, contains four counts. Count One is an FMLA interference claim. Ms. Brown alleges that with a reasonable accommodation for her lifting and standing restrictions, she

"could have performed the essential functions of her job . . . ."  (Am. Compl. ¶ 17.) She contends that the Montgomery Surgical Center interfered with her FMLA rights by refusing "to allow [her] to return to work until she was fully released by her doctor. . . ."  (Am. Compl. ¶ 18.)   Count Two alleges a claim for failure to accommodate under the ADA, which is grounded on the same facts as the FMLA interference claim.

Count Three is an FMLA retaliation claim.  Ms. Brown alleges that she had a right under the FMLA to return to work with an ADA reasonable accommodation, but that the Montgomery Surgical Center "refused to allow [her] to return to work unless she was 'one hundred percent.'" (Am. Compl. ¶¶ 28, 32.)  Count Four alleges an ADA retaliation claim, arising from Ms. Brown's filing of her First EEOC Charge and her subsequent termination.[1]

## IV.  DISCUSSION

Counts I and III allege FMLA interference and retaliation claims.  Count II and IV allege ADA discrimination and retaliation claims.  The court first addresses the FMLA claims and then the ADA claims.

---

[1] The Amended Complaint does not pursue a Title VII retaliation claim, as alleged in the original Complaint.

A.     **FMLA Interference and Retaliation Claims**

The FMLA claims fail as a matter of law.  Under the FMLA, an employee has "two distinct rights:  the right to take leave for the treatment of a serious health condition . . . and the right to be reinstated to the former position or an equivalent position at the end of leave."  *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004) (quoting 29 U.S.C. §§ 2516(a)(1), 2614(a)).  To protect these rights, the FMLA prohibits employers from interfering with, restraining, or denying "the exercise of or the attempt to exercise" these rights guaranteed under the Act.  29 U.S.C. § 2615(a)(1).  Under § 2615(a), there are two types of claims:  "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act; and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in an activity protected by the Act."  *Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1272 (11th Cir. 2012).

1.     *FMLA Interference Claim*

To state an FMLA interference claim, Ms. Brown need only allege that the Montgomery Surgical Center denied her an FMLA right.[2]  *See Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1241 (11th Cir. 2010).

_____

[2] The Montgomery Surgical Center does not contest Ms. Brown's allegations that at all material times, it was an FMLA-covered employer, Ms. Brown was an FMLA-eligible employee, and Ms. Brown had a serious health condition.  (Am. Compl. ¶¶ 5–7, 14.)

The Montgomery Surgical Center contends that the sole right that Ms. Brown claims she was denied under the FMLA is the right to reinstatement with an ADA reasonable accommodation.  The Montgomery Surgical Center contends that the FMLA's right to reinstatement does not encompass reinstatement with an ADA reasonable accommodation or preclude an employer from discharging an employee who, after the expiration of FMLA leave, is unable to perform an essential function of her job.  Therefore, the Montgomery Surgical Center argues that Ms. Brown fails to allege the denial of a right guaranteed by the FMLA.

Ms. Brown does not refute the Montgomery Surgical Center's characterization of her FMLA interference claim.[3]  The court accepts this characterization as well. Rather, Ms. Brown argues that her claim presents a "novel question of law" concerning when "an employee can leave work on FMLA leave and return as a disabled employee."  (Doc. # 30, at 4.)  She contends that her FMLA interference claim should be "allowed to go forward with the overlapping ADA claim because both Acts of Congress cover two classifications of people that Congress intended to

---

[3] Consistent with the Montgomery Surgical Center's characterization, as to the rights alleged, Ms. Brown does not allege that she was denied FMLA leave.  To the contrary, she alleges that her employer "approved" her FMLA leave request.  (Am. Compl. ¶ 14.)  She further alleges that she received twelve weeks of FMLA leave, although she avers that she wanted to return earlier with a reasonable accommodation.  (Am. Compl. ¶ 34.)  It is Ms. Brown's claimed right to reinstatement under the FMLA with an ADA reasonable accommodation that is at issue.

protect." (Doc. # 30, at 4.)  For the reasons that follow, Ms. Brown's argument is not as novel as she suggests.

The FMLA permits an eligible employee to take up to twelve weeks of unpaid leave each year for reasons enumerated in the statute, including a "serious health condition" that renders the employee unable to perform an essential function of her position.  *See* 29 U.S.C. § 2612(a)(1)(D).  After an employee's qualifying FMLA absence, a covered employer must reinstate the employee to his or her former position or an alternate one with equivalent pay, benefits, and working conditions.  29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.214.  The right to reinstatement, however, "is not absolute."  *Schaaf*, 602 F.3d at 1241.  For example, "[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition, . . . the employee has no right to restoration to another position under the FMLA."  29 C.F.R. § 825.216(c).  In that situation, "[t]he employer's obligations may, however, be governed by the Americans with Disabilities Act (ADA), as amended.  See § 825.702, state leave laws, or workers' compensation laws."  *Id.*

Moreover, the Eleventh Circuit has observed that "[t]he leave provisions of the FMLA are 'wholly distinct from the reasonable accommodation obligations of employers covered under the ADA.'"  *Gilliard v. Ga. Dep't of Corr.*, No. 12-11751, 2012 WL 6115913, at *2 (11th Cir. Dec. 7, 2012) (quoting 29 C.F.R. § 825.702(a)).  In *Gilliard*, the Eleventh Circuit concluded that "[t]o the extent that [the employee]

10

argues that the failure to provide her with extended leave at the conclusion of her FMLA leave denied her of a reasonable accommodation, the reasonable-accommodation requirement under the ADA is distinct from [an] FMLA interference claim." *Id. Gilliard* rejected, therefore, the employee's attempt to read a reasonable accommodation requirement into the FMLA.  Similarly, the Eleventh Circuit has concluded that an employee who is unable to perform an essential job function is not entitled to reinstatement upon returning from FMLA leave. *See Grace v. Adtran, Inc.*, 470 F. App'x 812, 816 (11th Cir. 2012) ("Because Grace was still restricted from lifting more than 10-pounds at the end of her FMLA leave, she remained unable to perform an essential function of her position and, thus, was unentitled to return to her position."); *see also Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) ("We have held that 'an employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave.'" (quoting *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 506–07 (6th Cir. 2006)).

The Third and Eighth Circuits also have addressed an employer's FMLA obligation to reinstate a returning employee to his or her same or an equivalent job with an ADA reasonable accommodation.  Rejecting this conflation of the FMLA's and ADA's standards, the Eighth Circuit has held that "the FMLA omits any requirement that employers seek to reasonably accommodate employees who cannot

11

perform the essential function of their respective positions." *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 865 (8th Cir. 2006) (citing former 29 C.F.R. § 825.214(b)[4]). The Third Circuit similarly has concluded that "[t]he FMLA does not require 'an employer to provide a reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the conclusion of his [FMLA] medical leave.'" *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012) (quoting *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375 (3d Cir. 2002)); *see also Tardie v. Rehab. Hosp. of R.I.*, 168 F.3d 538, 544 (1st Cir. 1999) (observing that the former § 825.214(b), unlike the ADA, "omits the qualifying 'with or without reasonable accommodation' language" and "does not import the 'reasonable accommodation' qualifier into the FMLA").

Here, based upon the foregoing authority, the court finds that Ms. Brown fails to allege that the Montgomery Surgical Center denied her a right guaranteed her by the FMLA. The FMLA right she asserts is restoration to her job with an ADA reasonable accommodation. But there was no FMLA obligation imposed on the Montgomery Surgical Center to reinstate Ms. Brown to her position with modified duties to accommodate the lifting and standing restrictions imposed by her doctor.

---

[4] The Department of Labor amended the FMLA implementing regulations, effective January 16, 2009. While paragraph (b) of § 825.214 now is paragraph (c) of § 825.216(e), it remains substantially unchanged. *Compare* 29 C.F.R. §§ 825.214(b) (2006), *with* 29 C.F.R. § 825.216 (2009).

That obligation arose, if at all, under the ADA.  Instead, the FMLA guaranteed Ms. Brown the ability to return to her position as a Central Sterile Technician or its equivalent upon her return from FMLA leave, but that guarantee existed only if she was able to perform the job's essential functions.  By pleading that she requested to return to work with an ADA reasonable accommodation, Ms. Brown effectively admits that she was not able to perform the essential functions of her job.  And Ms. Brown does not allege or argue that at any time between February 16, 2010 (the date her employer approved her FMLA leave) and September 10, 2010 (the date of her termination), she was able to perform the essential functions of her job.

On these facts, the Montgomery Surgical Center could not have interfered with Ms. Brown's FMLA rights.  Ms. Brown's failure to plead a right guaranteed by the FMLA requires dismissal of the FMLA interference claim.

### 2.    *FMLA Retaliation Claim*

In an FMLA retaliation case, the "employee asserts that [her] employer discriminated against [her] because [s]he engaged in activity protected by the" FMLA. *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001).  The Montgomery Surgical Center argues that, just like the FMLA interference claim, the FMLA retaliation claim cannot survive Rule 12(b)(6) review because it rests "solely on an alleged failure to 'accommodate' [Ms.

Brown's] medically-related work restrictions." (Doc. # 29, at 20.) Ms. Brown's arguments mimic the ones she made in opposition to the motion to dismiss her FMLA interference claim. Those arguments again fail.

In the FMLA retaliation count, Ms. Brown alleges that she "exercised her rights under the FMLA to return to work" conditioned upon her employer providing her a reasonable accommodation. (Am. Compl. ¶ 28.) In Part IV.A.1., the court rejected Ms. Brown's legal theory that the right to reinstatement with a reasonable accommodation is a right protected under the FMLA. For the same reasons, the court finds that for purposes of her retaliation claim, Ms. Brown did not engage in protected activity under the FMLA when she asked to return to work with an ADA reasonable accommodation. Thus, her retaliation claim predicated upon an FMLA right to return to work with a reasonable accommodation fails.

Additionally, nowhere in her Complaint (or in her brief for that matter) does Ms. Brown plausibly suggest that the Montgomery Surgical Center refused to reinstate her and ultimately fired her *because* she took FMLA leave. Rather, her legal theory is that her employer did not allow her to return to work *because* it refused "to reasonably accommodate [her] in accord with her Plaintiff's doctor's instructions." (Am. Compl. ¶ 31.) Taken as true, the facts establish that her employer refused to reinstate her (and ultimately terminated her) not because she availed herself of FMLA

leave, but because she could not perform an essential function of her job. While these allegations may have the makings of a promising ADA claim, they do not allege an FMLA retaliation claim as a matter of law. Ms. Brown urges again for a blended FMLA/ADA theory, this time for an FMLA retaliation claim that incorporates the ADA's reasonable accommodation requirements. With no other theory advanced, the FMLA retaliation claim, as pleaded and argued, fails just as the FMLA interference claim did.

## B.   ADA Discrimination and Retaliation Claims

The ADA claims are subject to dismissal for Ms. Brown's failure to exhaust her administrative remedies.[5] The ADA incorporates Title VII's procedural requirements. *See* 42 U.S.C. § 12117(a). In Alabama, a non-deferral state, "an ADA plaintiff must file a charge complaining about an allegedly unlawful employment practice . . . with the EEOC within 180 days of the employment practice." *Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001) (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Price v. M & H Valve Co.*, 177 F. App'x 1, 9 (11th Cir. 2006) (recognizing that Alabama is a non-deferral state). Once a plaintiff has received

---

[5] The court need not reach, therefore, the Montgomery Surgical Center's alternative argument that the Amended Complaint does not allege sufficient facts of a qualifying disability to support her ADA claims. Likewise, the court need not address Ms. Brown's contention that the proposed Second Amended Complaint, which is attached as an exhibit to her brief but unaccompanied by a motion to amend, cures any pleading deficiencies as to the substantive elements of her claims.

notice that the EEOC has dismissed the charge, he or she has 90 days to file suit. *See Bryant v. U.S. Steel Corp.*, 428 F. App'x 895 (11th Cir. 2011); *Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999). The Eleventh Circuit strictly enforces the ninety-day deadline.

Moreover, "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam)). "'[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" *Id.* (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807 (1980)). Hence, with limited exceptions, a plaintiff's failure to adhere to the filing deadlines requires dismissal of the untimely claim. *See E.E.O.C. v. Summer Classics, Inc.*, 471 F. App'x 868, 870 (11th Cir. 2012).

### 1. *ADA Discrimination Claim*

#### a. 90-Day Filing Deadline

The Montgomery Surgical Center argues that Ms. Brown's ADA failure-to-accommodate claim is time barred because Ms. Brown did not bring this claim within 90 days of receiving her right-to-sue letter from the EEOC on the Second EEOC Charge. Ms. Brown concedes that her Amended Complaint, which debuted the ADA

failure-to-accommodate claim, was filed outside the required 90-day period.  She argues, however, that her ADA failure-to-accommodate claim is timely because it relates back to her original Complaint, which alleged a Title VII retaliation claim and which she undisputedly filed within the 90-day deadline.

### b.   Relation Back

"Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S.p.A.*, 130 S. Ct. 2485, 2489–90 (2010).  The rule provides that an amended pleading "relates back" to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  "[T]he critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted." *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) (citation and internal quotation marks omitted)).  Ultimately, "[s]o long as the original and amended [complaints] state claims that are tied to a common core of operative facts, relation back will be in order." *Mayle v. Felix*, 545 U.S. 644, 664 (2005).  On the other hand, "[w]hen new or distinct conduct, transactions, or occurrences are alleged as grounds for recovery,

17

there is no relation back, and recovery under the amended complaint is barred by limitations if it was untimely filed." *Moore*, 989 F.2d at 1131 (citation and internal quotation marks omitted).

Furthermore, Ms. Brown's *pro se* status at the commencement of this suit provides no basis for leniency in the application of Rule 15(c)(1)(B). *Pro se* litigants remain "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). However, because Ms. Brown was unrepresented when she filed her original Complaint, the original Complaint receives liberal construction. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" (internal quotations omitted)). Even under liberal construction of the original Complaint, however, Rule 15(c)(1)(B)'s requirements are not met.

The analysis focuses on a comparison of the two pleadings – the original Complaint and the Amended Complaint – in search of a common core of operative facts between the original and newly asserted claims. As the factual basis for the ADA failure-to-accommodate claim in the Amended Complaint, Ms. Brown alleges that on April 21, 2010, she would have been able to perform the essential functions of her job with a reasonable accommodation. She contends, however, that the

Montgomery Surgical Center "refused to restore [her] to the position that she held prior to seeking such accommodation," in violation of the ADA. (Am. Compl. ¶ 25.) In her original Complaint, Ms. Brown restricts her allegations to facts indicating retaliatory treatment by her employer.  On the form Complaint, she indicates in paragraph 4 that she is complaining of "retaliation" and her "termination." (Compl. 1.)  In paragraph 9, Ms. Brown alleges that the Montgomery Surgical Center denied her unemployment compensation and employee emergency assistance and then fired her, all "in retaliation for filing a previous charge . . . ." (Compl. 2.)  Ms. Brown also attaches the Second EEOC Charge (and the attendant right-to-sue letter) to her original Complaint.  While the court deems the Second EEOC Charge as part and parcel of the original Complaint, *see, e.g., Clark v. Huntleigh Corp.*, 119 F. App'x 666, 667 (5th Cir. 2005) (observing that "because of Clark's *pro se* status, our precedent compels us to examine all of his complaint, including the attachments"), it, like the four corners of the Complaint, is silent with respect to any facts or conduct relevant to Ms. Brown's present allegations of disability discrimination and failure to accommodate.  For its part, the Second EEOC Charge substantially mirrors the original Complaint.

Neither the Complaint nor the Second EEOC Charge mentions any facts suggesting that the Montgomery Surgical Center discriminated against Ms. Brown

based upon a disability. There is no hint in either the Complaint or the Second EEOC Charge that Ms. Brown had a medical condition (much less an ADA-qualifying disability), that she had any physical limitations, or that she needed a reasonable accommodation with respect to her duties in order to perform an essential function of her job. Both focus solely on conduct pertinent to alleged retaliatory treatment. The court is compelled, thus, to find that the ADA failure-to-accommodate claim alleged for the first time in the Amended Complaint raises conduct that is new and distinct from the conduct alleged in the original Complaint. There is no common core of operative facts between the two pleadings.

The court also has considered that the original Complaint references the "previous charge," which is the First EEOC Charge, for the purpose of identifying the activity that triggered the alleged retaliatory treatment. But problematic for even the *pro se* litigant is that there is no description, mention, or attempted incorporation of the allegations underlying that EEOC charge. *Cf. Ackerman v. City of Harvey Police Dep't*, No. 96-c-4363, 1998 WL 67632, at *3 (N.D. Ill. Jan. 29, 1998) (finding Rule 15's relation-back principles satisfied where, although the *pro se* plaintiff failed to include in her complaint allegations pertaining to her later-filed religious discrimination claim, she had attached copies of the relevant EEOC charges to her original complaint). Any factual basis for an ADA failure-to-accommodate claim is

wholly missing from the original Complaint (and its attachments).   The original Complaint (and its attachments) are insufficient to place the Montgomery Surgical Center on notice that Ms. Brown was attempting to assert conduct that might later serve as the basis for an ADA failure-to-accommodate claim.   This finding is all the more compelling where Ms. Brown presumably had both notice-of-rights letters in hand when she filed her original Complaint (as the letters indicate that they were mailed on the same date), yet she avoided both the mention of the nature of the First EEOC Charge and its inclusion.   *See Pearson v. PeopleScout, Inc.*, No. 10-c-5542, 2011 WL 1575990, at *2 (N.D. Ill. Apr. 26, 2011) (making this same point in its analysis and rejecting the application of Rule 15(c)(1)(B)'s relation back principle). There is no manner in which to construe the original Complaint as asserting or attempting to assert facts that support the newly alleged ADA failure-to-accommodate claim.

Advocating a contrary position, however, Ms. Brown points to paragraph 8 of her *pro se* Complaint, where she penned that the "alleged discrimination occurred" between "February 16, 2010 [and] April 21, 2010."[6]   (Compl. ¶ 8.)   She argues that paragraph 8 is an attempt to set out conduct underlying her ADA failure-to-accommodate claim.   Ms. Brown cites no authority where a court permitted

_____

[6] As alleged, February 16 is the date that Ms. Brown commenced her approved FMLA leave, and April 21 is the date she requested, but was denied, a reasonable accommodation.

21

relation back where the original complaint and its attachments omitted entirely any statement about the nature of the conduct underlying the new claim. The dates supplied in paragraph 8 cannot be viewed in a factual vacuum. Without any facts in the original Complaint providing even a glimpse of conduct suggesting a potential ADA failure-to-accommodate claim, the dates themselves are insufficient to satisfy Rule 15(c)(1)(B)'s "conduct, transaction, or occurrence" requirement.

Finally, Ms. Brown contends that because her First EEOC Charge alleging ADA discrimination referenced the February and April 2010 dates, she should not be penalized because she "did not staple" the First EEOC Charge to her original Complaint. (Doc. # 30, at 1.) But the text of Rule 15(c) provides that the pleading relates back only where the new claim arises "out of the conduct transaction or occurrence set out . . . in the *original pleading*." Fed. R. Civ. P. 15(c). In *Mayle*, the Supreme Court held that "[t]he original pleading to which Rule 15 refers is the complaint in an ordinary civil case." 545 U.S. at 655. Relying on *Mayle*, the Tenth Circuit has rejected a plaintiff's "argument that her new claim relate[d] back because it was included in her EEOC charge." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 962 (10th Cir. 2012). The court rejects Ms. Brown's similar argument.

In sum, the ADA failure-to-accommodate claim in the Amended Complaint does not satisfy Rule 15(c)(1)(B) and, thus, does not relate back to Ms. Brown's

original Complaint.  The ADA failure-to-accommodate is due to be dismissed as time barred.

### 2.   *ADA Retaliation Claim*

#### a.   **180-Day Filing Deadline**

The Montgomery Surgical Center argues that the ADA retaliation claim is time barred by the 180-day rule.  It is undisputed and clear from the face of the Amended Complaint, as well as the EEOC documents attached to it, that Ms. Brown did not file her Second EEOC Charge alleging retaliation until March 22, 2011, which was 195 days after her termination.  (*See* Am. Compl. ¶¶ 44, 46.)  Ms. Brown argues, however, that her Second EEOC Charge "grew out of" her First EEOC Charge alleging disability discrimination and, therefore, did not require independent administrative exhaustion.  (Doc. # 30, at 9.)  Ms. Brown relies upon the concept of ancillary jurisdiction announced in *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. Aug. 28, 1981).[7]  Alternatively, Ms. Brown suggests that her ADA retaliation claim is timely based upon equitable tolling.

#### b.   *Gupta*

In *Gupta*, the former Fifth Circuit held that a plaintiff need not "exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier

---

[7] In *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent decisions of the Fifth Circuit rendered before October 1, 1981.

charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court."[8]  654 F.2d at 414; *accord Hargett v. Valley Fed. Sav. Bank*, 60 F.3d 754, 762 (11th Cir. 1995).  Courts have debated *Gupta*'s continuing vitality in light of the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges").  *See Sapp v. Potter*, 413 F. App'x 750, 752 n.2 (5th Cir. 2011) ("Some circuits have . . . held that the Supreme Court's *Morgan* decision abolished or narrowed the *Gupta* exception." (collecting cases)); *see also Bennett v. Chatham Cnty. Sheriff Dep't*, 315 F. App'x 152, 162 n.7 (11th Cir. 2008) (noting the circuits' disagreement as to whether after *Morgan* "discrete acts of retaliation must be exhausted" (collecting cases)).  The court need not decide whether

---

[8] The plaintiff in *Gupta* timely filed an EEOC charge alleging that his employer discriminated against him based on his national origin and religion.  After he received a right-to-sue letter from the EEOC, the plaintiff timely filed a lawsuit based on the claims asserted in his EEOC charge.  *See* 654 F.2d at 412–13.  Subsequently, the plaintiff's employer notified him of his contract non-renewal.  The plaintiff amended his complaint to allege that the non-renewal of his contract was in retaliation for filing his earlier EEOC charge.  He did not file, however, a separate charge with the EEOC alleging retaliation.

The employer argued that the retaliation claim was subject to dismissal for failure to exhaust administrative remedies, but the *Gupta* court rejected that argument.  It concluded that the plaintiff's retaliation claim was ancillary to the earlier EEOC charge that was validly before the court and that jurisdiction over the claim was proper, notwithstanding the plaintiff's failure to exhaust his retaliatory discharge claim administratively.  *See id.* at 414.  The court reasoned, "It is the nature of retaliation claims that they arise after the filing of the EEOC charge." *Id.* "Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case – a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII." *Id.*

*Gutpa* remains good law after *Morgan* because the facts of this case do not warrant its application.

Ms. Brown emphasizes that, like the plaintiff in *Gupta*, she timely filed an EEOC charge alleging disability discrimination (*i.e.*, the First EEOC Charge).  Ms. Brown omits mentioning, however, that unlike the plaintiff in *Gupta*, she did not timely file her suit with respect to her ADA discrimination claim.  As explained in Part IV.B.1., Ms. Brown's underlying ADA discrimination claim is time barred based upon her failure to bring suit within 90 days of her receipt of the EEOC's right-to-sue letter on the First EEOC Charge.  In *Gupta*, the plaintiff timely filed both the underlying EEOC charge and the lawsuit alleging the underlying discrimination.

Assuming without deciding that *Gupta* remains intact, the court finds that it is distinguishable where, as here, the plaintiff administratively exhausts the underlying discrimination claim before the EEOC, but then fails to file suit timely.  At least three courts have found *Gupta* inapplicable on sufficiently analogous facts, and their reasoning is persuasive.  *See Lightfoot v. OBIM Fresh Cut Fruit Co.*, No. 4:07cv608, 2008 WL 4449512, at *3 (N.D. Tex. Oct. 2, 2008) (dismissing the plaintiff's unexhausted retaliation claim where, although raised in a timely EEOC charge, the underlying race and disability discrimination claims were "not properly before" the court, given that the EEOC had not issued a right-to-sue letter on those claims); *Leonard v. Rumsfeld*, 146 F. Supp. 2d 1227, 1237 (M.D. Ala.) (dismissing the

plaintiff's unexhausted retaliation claims because she had failed to file suit "within 90 days of receipt of the final agency decision on her underlying discrimination claims"), *aff'd without op.*, No. 01-13847, 2001 WL 1690557 (11th Cir. 2001); *Wilson v. Shell Oil Co.*, No. 94-3693, 1995 WL 311911, at *3 (E.D. La. May 18, 1995) (finding that the plaintiff did not have a discrimination claim "properly before the court" because he had never filed suit on his timely-filed EEOC charge of discrimination and, thus, there was "no discrimination charge to which his retaliation claim c[ould] attach" (citation and internal quotation marks omitted)).

On these facts, Ms. Brown's ADA retaliation claim does not qualify for *Gupta*'s exception to the exhaustion requirement. Ms. Brown's First EEOC Charge never was "properly before the court," *Gutpa*, 654 F.2d at 414, because Ms. Brown did not timely file suit on that charge and, thus, there never was an EEOC charge to which Ms. Brown could attach her unexhausted retaliation claim. Accordingly, Ms. Brown's ADA retaliation claim is due to be dismissed as time barred.

### c.  Equitable Tolling

Ms. Brown alludes to, but does not specifically mention, the doctrine of equitable tolling. She argues that, although she filed her Second EEOC Charge outside the 180-day statutory period, her delay in filing is "the fault of a government bureaucracy." (Doc. # 30, at 10.) In her Amended Complaint, Ms. Brown alleges that she contacted the EEOC on September 8, 2010, to "report the termination," but

that the EEOC did not mail her a "Retaliation Charge Draft" until March 21, 2011, which was more than 180 days after her termination.  (Am. Compl. ¶¶ 44–46.)  Ms. Brown alleges that she acted promptly by filing the Second EEOC Charge on March 22, 2011.

The 180-day time limit for filing charges with the EEOC is not a jurisdictional prerequisite but "is subject to . . . equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).  Equitable tolling is "'appropriate when a movant untimely files because of *extraordinary circumstances* that are both beyond his control and unavoidable even with diligence.'"  *Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment v. CSX Transp., Inc.*, 522 F.3d 1190, 1197 (11th Cir. 2008) (quoting *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006)).  "The plaintiff bears the burden of showing that such extraordinary circumstances exist." *Arce*, 434 F.3d at 1261.  Extraordinary circumstances do not arise, for example, from a plaintiff's "*pro se* status" or "ignorance of the judicial process," or from "slow administrative proceedings." *Hunt v. Ga. Dep't of Cmty. Affairs*, No. 12-10935, 2012 WL 4074568, at *2 (11th Cir. Sept. 18, 2012) (citing *Wakefield v. R.R. Ret. Bd.*, 131 F.3d 967, 969–70 (11th Cir. 1997)).  And where the complaint's allegations facially demonstrate that the claim is untimely and omit allegations to support equitable tolling, the plaintiff generally cannot survive a motion to dismiss on tolling grounds.

*Cf. Henderson v. Reid*, 371 F. App'x 51, 54 (11th Cir. 2010) (holding that 12(b)(6) dismissal was appropriate where the plaintiff filed suit outside the limitations period and his complaint did not "plausibly allege any facts showing that he [was] entitled to equitable tolling"); *Quina v. Owens-Corning Fiberglas Corp.*, 575 F.2d 1115, 1119 (5th Cir. 1978) (affirming dismissal of lawsuit where the plaintiff failed to allege facts of timely filing of an EEOC charge for age discrimination claim or facts that justified equitable tolling).

As a threshold matter, Ms. Brown does not argue that her oral communication with the EEOC on September 8, 2010, notifying it of her allegedly retaliatory termination, is a proper substitute for the required written charge. *See* 42 U.S.C. §2000e-5(b) (providing that EEOC charges must be filed in "writing"). Even if she had, the court found no authority that would support that contention. *Cf. Vela v. Village of Sauk Village*, 218 F.3d 661, 664–65 (7th Cir. 2000) (holding that oral communications with an EEOC intake officer were insufficient to preserve a claim not contained in the EEOC charge); *Martin v. Pa. Dep't of Corrs.*, No. 07cv587, 2008 WL 4279761, at *5 (W.D. Pa. Sept. 12, 2008) (rejecting assertion that telephone call to EEOC satisfied Title VII's written charge requirement).

Ms. Brown's argument comes closest to those cases permitting equitable tolling where the EEOC misled the employee, but the argument finds no support in the

allegations.  In *Chappel v. Emco Mach. Works*, 601 F.2d 1295 (5th Cir. 1975), the former Fifth Circuit recognized that "equitable modification is appropriate when the EEOC misleads a complainant about the nature of his rights." *Id.* at 1303; *accord Jones v. Wynne*, 266 F. App'x 903, 906 (11th Cir. 2008).  To successfully invoke equitable tolling, plaintiffs generally must show "some affirmative misconduct, such as deliberate concealment." *Jackson v. Astrue*, 506 F.3d 1349, 1354 (11th Cir. 2007) (citation and internal quotation marks omitted).

Ms. Brown's Amended Complaint is noteworthy for what it does not allege. It does not allege that the EEOC misled Ms. Brown about her filing rights when she called on September 8 or otherwise deceived her into missing the 180-day deadline. It also does not allege that the EEOC discouraged or prevented Ms. Brown from filing a separate EEOC charge based upon retaliation.  At best, the Amended Complaint and attached documents reveal Ms. Brown's September 8 telephone call to the EEOC and the EEOC's letter, dated after the expiration of the 180-day time period, that noted Ms. Brown's "recent inquiry" and attached a draft charge for Ms. Brown to sign. There are no allegations divulging the reason for the delay between Ms. Brown's phone call and the EEOC's letter, and on this complaint, speculation, not liberal construction, would be required to guess the reason.   It suffices to say that there are no allegations that suggest that the EEOC engaged in any affirmative misconduct.

Finally, even if the EEOC had contributed to Ms. Brown's filing delay, the Amended Complaint contains no allegations that in the six-month interim between Ms. Brown's phone call and the EEOC's letter, Ms. Brown acted diligently in pursuing her claim. The Amended Complaint simply is silent as to what, if anything, Ms. Brown did to pursue her claim.

Accordingly, Ms. Brown fails to allege any extraordinary circumstances beyond her control and unavoidable with diligence that prevented her from filing an EEOC charge within 180 days of her termination. The facts do not warrant, therefore, the application of equitable tolling. Ms. Brown's ADA retaliation claim is time barred and subject to dismissal.

## V. CONCLUSION

The Amended Complaint fails to set forth facts sufficient to support a cognizable legal theory under the FMLA, and Ms. Brown's ADA claims are time barred. Accordingly, Defendant Montgomery Surgical Center's Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 28) is GRANTED.

A separate judgment will be entered.

DONE this 20th day of March, 2013.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE